**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF NEW YORK**

─────────────────────────────

**PATRICIA L. GIBBONS ,**

                              **Plaintiff,**                              **19-CV-33Sr**

**v.**

**COMMISSIONER OF SOCIAL SECURITY,**

                              **Defendant.**

─────────────────────────────

<u>**DECISION AND ORDER**</u>

        As set forth In the Standing Order of the Court regarding Social Security

Cases subject to the May 21, 2018 Memorandum of Understanding, the parties have

consented to the assignment of this case to the undersigned to conduct all proceedings

in this case, including the entry of final judgment, as set forth in 42 U.S.C. § 405(g).

Dkt. #12.


**BACKGROUND**

        Plaintiff applied for disability insurance benefits with the Social Security

Administration ("SSA"), on August 24, 2015, alleging disability beginning July 23, 2014,

at the age of 50, due to severe arthritis, diabetes, hypothyroidism, allergies, high blood

pressure and gastroesophageal reflux disease ("GERD"). Dkt. #8, pp.73-74.


        On December 5, 2017, plaintiff appeared with counsel and testified, along

with an impartial vocational expert ("VE"), Rachel Duchon, at an administrative hearing

before Administrative Law Judge ("ALJ"), Mary Mattimore. Dkt. #8, pp.35-71. Plaintiff

testified that she is a high school graduate with two years of post-secondary vocational

training as an administrative assistant. Dkt. #8, p.43. She worked for the same

pharmaceutical company since 1986 and had been in the position of Documentum

Coordinator[1] since 1996, utilizing Documentum software to review, track approval of

and maintain standard operating procedures for the facility and maintaining archives of

such documents, which required her to move boxes and walk most of the day. Dkt. #8,

pp.44-45 & 58-60. She testified that she was the main coordinator for the quality

control/quality assurance group at her facility. Dkt. #8, p.61. Plaintiff stopped working on

April 21, 2014 when she felt a pop in her right knee. Dkt. #8, p.46. She underwent a

right knee replacement in June of 2014. Dkt. #8, p.47. Her left knee had been replaced

in April of 2012. Dkt. #8, p.47.

        Plaintiff testified that she lives with her mother, who is totally disabled.[2]

Dkt. #8, p.55.  Plaintiff grocery shops,[3] vacuums and does the laundry, which is in the

---

[1] A work history report completed by plaintiff's employer indicated that plaintiff's job as Documentum Coordinator involved
        work on the computer answer phone for example help desk,
        copying, issuing, filing and distributing paperwork.folders,
        generating reports for management and corporate. Filing
        paperwork for archiving, going to archiving to retrieve documents,
        issuing logbooks, acting as a backup for management and
        coworkers.
Dkt. #8, p.240.

[2] Plaintiff completed a Function Report indicating that she cares for her mother by bathing, feeding and cleaning out her commode. Dkt. #8, p.227.

[3] Plaintiff completed a Function Report indicating that she uses a motorized cart for grocery shopping. Dkt. #8, p.230.

basement. Dkt. #8, pp.51-52. She cooks simple meals and uses paper plates to minimize dish washing. Dkt. #8, pp.54-55. Plaintiff uses a cane for stability and is able to go up and down stairs.  Dkt. #8, pp.42-43. She testified that she can walk about ten minutes and lift a gallon of water. Dkt. #8, pp.53-54. She takes Motrin for pain. Dkt. #8, p.48. She drove herself to the hearing. Dkt. #8, p.56.

The VE classified plaintiff's work history as clerical worker, performing semi-skilled work at a light exertional level. Dkt. #8, p.61. When asked to assume an individual with the residual functional capacity ("RFC"), to perform light work[4] who was limited to 2-3 hours of standing and walking in a workday, but not more than 30 minutes at any one time, who was free to use a cane to ambulate and was capable of occasionally climbing stairs, ramps, ladders, and scaffolds and occasionally balancing, stooping, kneeling, crouching or crawling, with no exposure to temperature or humidity extremes, dust, fumes, smoke or other pulmonary irritants, the VE testified that plaintiff could no longer perform her past work as she performed it, but could perform the job of clerical worker as generally performed, with not more than 50% erosion of available positions due to her need to use a cane for ambulation. Dkt. #8, pp.61-62 & 64-65. The

---

[4]   Light work involves lifting no more than 20 pounds at a time and occasionally lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities. If someone can do light work, we determine that he or she can also do sedentary work, unless there are additional limiting factors such as loss of dexterity or inability to sit for long periods of time.
20 C.F.R. § 404.1567(b).

VE testified that plaintiff possessed transferable skills of preparing, keeping, sorting and distributing records and communications, as well as communicating and systemizing information and data, but that those skills would not afford plaintiff job opportunities at the light exertional level. Dkt. #8, p.63. The VE testified that plaintiff could use these transferable skills in sedentary, semi-skilled positions such as sorter, auction clerk or identification clerk. Dkt. #8, pp.62-64.  When asked to match the skill level, work field code and materials, products and subject matters code of plaintiff's past work experience at a sedentary level, the VE reiterated the job of identification clerk as a perfect match of transferable skills from her past relevant work and also provided options as a credit card control clerk and circulation clerk. Dkt. #8, pp.67-68.

On December 6, 2017, the ALJ submitted interrogatories to the VE as to whether an individual such as plaintiff, with a high school education and work experience as a clerical worker, with the capacity to lift and carry up to ten pounds frequently and up to twenty pounds occasionally, stand and/or walk for 2-3 hours in a workday, but only for 30 minutes at any one time, who could occasionally climb stairs, ramps, ladders, scaffolds, balance, stoop, kneel, crouch and crawl, but required the freedom to use a cane to ambulate and could not tolerate exposure to temperature extremes, humidity, dust, fumes, smoke or other pulmonary irritants, could perform any unskilled occupations with jobs that exist in the national economy. Dkt. #8, pp.280-281. The VE responded that such an individual could work as an information clerk or office helper, both of which are unskilled positions with a light exertional level, but noted that "[t]hese positions would require a sit/stand option." Dkt. #8, p.281.

The ALJ rendered a decision that plaintiff was not disabled on March 5, 2018. Dkt. #8, pp.19-29. The Appeals Council denied review on November 27, 2018. Dkt. #8, p.5. Plaintiff commenced this action seeking review of the Commissioner's final decision on January 4, 2019. Dkt. #1.

## DISCUSSION AND ANALYSIS

"In reviewing a final decision of the SSA, this Court is limited to determining whether the SSA's conclusions were supported by substantial evidence in the record and were based on a correct legal standard." *Talavera v. Astrue*, 697 F.3d 145, 151 (2d Cir. 2012). Substantial evidence is defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Moran v. Astrue*, 569 F.3d 496, 501 (2d Cir. 2009). If the evidence is susceptible to more than one rational interpretation, the Commissioner's determination must be upheld. *McIntyre v. Colvin*, 758 F.3d 146, 149 (2d Cir. 2014). "Where an administrative decision rests on adequate findings sustained by evidence having rational probative force, the court should not substitute its judgment for that of the Commissioner." *Yancey v. Apfel*, 145 F.3d 106, 111 (2d Cir. 1998).

To be disabled under the Social Security Act ("Act"), a claimant must establish an inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months. 20 C.F.R. § 404.1505(a). The Commissioner must follow a five-step

sequential evaluation to determine whether a claimant is disabled within the meaning of the Act. 20 C.F.R. § 404.1520(a). At step one, the claimant must demonstrate that he is not engaging in substantial gainful activity. 20 C.F.R. § 404.1520(b). At step two, the claimant must demonstrate that he has a severe impairment or combination of impairments that limits the claimant's ability to perform physical or mental work-related activities. 20 C.F.R. § 404.1520(c). If the impairment meets or medically equals the criteria of a disabling impairment as set forth in Appendix 1 of Subpart P of Regulation No. 4 (the "Listings"), and satisfies the durational requirement, the claimant is entitled to disability benefits. 20 C.F.R. § 404.1520(d). If the impairment does not meet the criteria of a disabling impairment, the Commissioner considers whether the claimant has sufficient RFC for the claimant to return to past relevant work. 20 C.F.R. § 404.1520(e)-(f). If the claimant is unable to return to past relevant work, the burden of proof shifts to the Commissioner to demonstrate that the claimant could perform other jobs which exist in significant numbers in the national economy, based on claimant's age, education and work experience. 20 C.F.R. § 404.1520(g).

       In the instant case, the ALJ made the following findings with regard to the five-step sequential evaluation: (1) plaintiff had not engaged in substantial gainful activity since her amended alleged disability onset date of July 23, 2014; (2) plaintiff's bilateral osteoarthritis of both knees and right hip and obesity constitute severe impairments; (3) plaintiff's impairments did not meet or equal any listed impairment; (4) plaintiff retained the RFC to perform light work with the following nonexertional limitations: plaintiff could lift and carry up to twenty pounds occasionally and ten pounds frequently, stand and walk for up to three hours in an eight hour day, but for no more

than thirty minutes at one time, occasionally climb stairs, ramps, ropes, ladders and scaffolds and occasionally balance, stoop, kneel, crouch and crawl, but requires use of a cane for ambulation and cannot tolerate exposure to temperature extremes, humidity, dust, fumes, odors, gases or other pulmonary irritants; and (5) plaintiff was capable of performing work as a sorter, auction clerk and identification clerk, each of which were semi-skilled sedentary jobs and was also capable of performing work as an information clerk and office helper, each of which were unskilled light jobs and was not, therefore, disabled within the meaning of the SSA. Dkt. #8, pp.21-29.

<u>Residual Functional Capacity</u>

Plaintiff argues that the ALJ failed to follow the treating physician rule when she ignored medical opinions from three treating physicians and failed to provide sufficient justification for affording such opinions less than controlling weight. Dkt. #9-1, pp.11-23. Plaintiff also argues that the ALJ failed to properly evaluate plaintiff's credibility and failed to address plaintiff's work history. Dkt. #9-1, pp.23-25.

The Commissioner responds that the ALJ's RFC is supported by the opinion of the consultative examiner which is not inconsistent with Dr. Wopperer's December, 2014 opinion. Dkt. #10-1, pp.18-21. The Commissioner argues that Dr. Wopperer's February 2016 opinion is inconsistent with his treatment notes and that the ALJ provided good reasons for affording this opinion, as well as Dr. Collier's opinion, little weight. Dkt. #10-1, pp.21-25. The Commissioner argues that the ALJ properly evaluated plaintiff's subjective complaints. Dkt. #10-1, pp.25-27.

Plaintiff replies that the ALJ improperly cherry picked portions of Dr. Wopperer's medical opinion which support her finding that plaintiff was not disabled and failed to properly analyze all of the medical opinions of record. Dkt. #11, pp1 & 3. Plaintiff further argues that the Commissioner's proffered reasons for rejecting these opinions were not set forth in the ALJ's decision and are not supported by the record. Dkt. #11, p.5. Plaintiff argues that the ALJ erred in relying upon the opinion of the consultative examiner without consideration for the record as a whole. Dkt. #11, p.6.

James Wopperer, M.D., performed plaintiff's left knee replacement in April of 2012 and right knee replacement on June 30, 2014. Dkt. #8, p.339. Following her right knee replacement, plaintiff made excellent post-operative progress and was granted permission to drive on September 2, 2014. Dkt. #8, pp.303-304. She was granted permission to return to work on September 30, 2014, but, on October 20, 2014, Dr. Wopperer reported that

> The patient states that she was willing to come back to work with some initial restrictions. Apparently her employer wants her to stand and walk and also repeatedly get up out of a seated position on a regular basis. She thinks that this is too much for her knee replacement which was just performed about 4 months ago. At this time, she is not able to return to work at her regular job. She would like to look for work however this might be somewhat difficult because she has had 2 knee replacement procedures on both of her legs. Naturally this does restrict her in terms of her ability to work on a regular basis.

Dkt. #8, pp.299 & 302. On December 22, 2014, Dr. Wopperer provided plaintiff with a note to remain off work indefinitely, explaining to her employer that

> her prognosis for return to work is good however given the fact that she now has bilateral knee replacements, she has

> been told to avoid standing and walking in excess of 2-3
> hours at a time. She has made excellent progress in her
> rehabilitation and I do not expect any further treatment at
> this time except for routine postoperative checks which
> typically occur every 6-12 months for a couple years
> following surgery.

Dkt. #8, p.322. Dr. Wopperer also advised that "it would be discouraged for her to perform such activities as kneeling, climbing ladders, carrying heavy objects or pushing in an aggressive fashion." Dkt. #8, p.322. Because plaintiff's job as a documentation coordinator required walking approximately a mile each day, and loading and unloading carts which plaintiff pushed to deliver books, files and other items, her employer terminated her employment on December 23, 2014. Dkt. #8, pp.184 & 202-204.

Plaintiff underwent an Internal Medicine Evaluation by Donna Miller, D.O., on October 30, 2015. Dkt. #8, p.433. Plaintiff advised that she dresses daily, showers five to seven times a week, cooks three to five times a week, grocery shops, cleans and washes laundry once a week. Dkt. #8, p.434. She was observed to have a normal gait was able to rise from a chair without difficulty and get on and off the examination table without assistance. Dkt. #8, p.435. Following examination and measurement of flexion and extension of her musculoskeletal system, Dr. Miller opined that plaintiff "has moderate limitation with heavy lifting, bending, kneeling, and squatting. Dkt. #8, p.436.

On January 25, 2016, Dr. Wopperer reported that plaintiff complained of minimal discomfort in either knee and pain only with weather changes and going outside in extreme cold. Dkt. #8, p.495. Dr. Wopperer opined that plaintiff appeared to be doing very well following right and left knee replacement surgery. Dkt. #8, p.495.

Dr. Wopperer completed a Physical Capacities Evaluation in April of 2016 which opined that plaintiff could sit for six or more hours in an eight hour workday and stand/walk for one hour in an eight hour workday with the ability to alternate sitting and standing at will throughout the day. Dkt. #8, p.439. Dr. Wopperer further opined that plaintiff could occasionally lift and carry up to ten pounds. Dkt. #8, p.439.

On November 17, 2016, Dr. Wopperer noted that x-rays performed earlier in the year revealed good positioning of the components without any obvious loosening present. Dkt. #8, p.497.

On January 12, 2017, Roger Warren Rogers, D.O., noted that plaintiff ambulates with no notable limp without assistive device. Dkt. #8, p.500. Dr. Rogers observed that plaintiff had bilateral extension to 0 degrees and flexion to 100 degrees on the left and 90 degrees on the right. Dkt. #8, p.500. Plaintiff performed multiple straight leg raises on each side without lag. Dkt. #8, p.500. Manual muscle testing demonstrated an ability to move through the full range of motion and hold against strong pressure bilaterally. Dkt. #8, p.500. The Vulgas and Varus stress test revealed bilateral stability. Dkt. #8, p.500. No notable knee effusion was observed. Dkt. #8, p.500. Dr. Rogers recommended physical therapy. Dkt. #8, p.501.

On the same date, January 12, 2017, plaintiff reported to her primary care physician, James T. Collier, M.D., that she had intermittent lumbar pain and was unable to sit or stand for more than 30 minutes due to sever arthropathy and pain in the hips

and knees. Dkt. #8, p.459. She reported that she was unable to walk 200 feet without stopping. Dkt. #8, p.460.

On February 15, 2017, plaintiff reported to Dr. Collier that she had persistent severe pain in the knees and back and was unable to sit or stand for more than 30 minutes. Dkt. #8, p.461. Upon examination, Dr. Collier observed tenderness in plaintiff's bilateral knees and lumbar spine. Dkt. #8, p.461.

On April 17, 2017, plaintiff advised Dr. Rogers that physical therapy aggravated her pain. Dkt. #8, p.504. Dr. Rogers observed that plaintiff ambulated with a mild right sided limp without an assistive device. Dkt. #8, p.503. Plaintiff's examination was consistent with that on January 12, 2017. Dkt. #8, p.504. Dr. Rogers referred plaintiff to an orthopedic total joint reconstruction specialist for consideration of revision total joint arthoplasty. Dkt. #8, pp.503-504.

On June 23, 2017, plaintiff was examined by Nicholas Violante, D.O. at Excelsior Orthopedics for complaints of right knee pain. Dkt. #8, p.540. Dr. Violante observed full right range of motion with significant laxity in plaintiff's right knee and negative Valgus and Varus stress test at both full extension and 30 degree flexion was negative. Dkt. #8, p.541. Dr. Violante opined that "the poly's in her knees are not thick enough which is causing her the instability and she would benefit from a [sic] up size in the poly." Dkt. #8, p.542. On July 28, 2017, Dr. Violante opined that surgical intervention was not appropriate for her left knee pain. Dkt. #8, p.549. Dr. Violante also

-11-

opined that plaintiff's left knee injury was a work injury and that the resulting temporary impairment was 50%. Dkt. #8, p.549.

On September 25, 2017 Dr. Collier observed that plaintiff's knees were tender and noted that "[d]ue to her chronic arthritic pains, [plaintiff] currently feels totally disabled and is not able to sit or stand for more than 30 minutes due to her severe arthropathy. Dkt. #8, p.469.

On October 25, 2017, Dr. Collier provided a Medical Source Statement opining that plaintiff could not walk more than one city block and could only sit for 30 minutes, stand for 10 minutes and sit and stand/walk for less than two hours in an eight hour day. Dkt. #8, p.534. Dr. Collier further opined that plaintiff could rarely lift more than 10 pounds and could never twist, stoop, bend, crouch, squat or climb ladders or stairs. Dkt. #8, p.535. Dr. Collier indicated that plaintiff would need to take a 10 minute break every 30 minutes during the work day and would always need to keep her legs elevated above her heart while sitting. Dkt. #8, p.535. Dr. Collier estimated that plaintiff would be absent from work more than 4 days per month and that her symptoms would constantly interfere with attention and concentration needed to perform even simple work tasks. Dkt. #8, pp.535-536.

In reaching her determination as to plaintiff's RFC, the ALJ afforded some weight to Dr. Wopperer's 2014 opinion that plaintiff should not stand or walk for more than two or three hours at a time because Dr. Wopperer is plaintiff's treating physician

and his opinion is consistent with the plaintiff's post-operative course. Dkt. #8, p.25. The ALJ afforded the 2015 opinion of consultative examiner Dr. Miller great weight because it was based upon personal examination and was consistent with plaintiff's treatment record. Dkt. #8, p.25. The ALJ afforded Dr. Wopperer's 2016 opinion very little weight because his treatment notes did not support his opinion that plaintiff could stand/walk only for one hour or needs to change position throughout the day and specifically noted that his January treatment note indicated that plaintiff had minimal discomfort in either knee and only has pain with weather changes and going outside in extreme cold. Dkt. #8, p.25. The ALJ afforded Dr. Collier's 2017 opinion little weight because his suggested limitations were based on plaintiff's subjective reports and the objective clinical findings provided no support for such limitations. Dkt. #8, p.25. To the extent that Dr. Violante's 50% temporary impairment could be considered an opinion, the ALJ determined that it should be given little weight because no specific limitations were set forth. Dkt. #8, p.25. The ALJ also noted plaintiff's ability to care for herself and her mother despite her complaints of difficulty with walking, standing, climbing stairs and lifting. Dkt. #8, p.24.

An ALJ is not required to adopt wholesale the opinion any one medical source, but is entitled to weigh all of the evidence available to make an RFC finding that is consistent with the record as a whole. *Matta v. Astrue*, 508 Fed. App'x 53, 56 (2d Cir. 2013). Even where the ALJ's determination does not perfectly correspond with any of the opinions of medical sources cited in his decision, the ALJ is entitled to weigh all of the evidence available to make a residual functional capacity finding that is consistent

with the record as a whole. *Trepanier v. Comm'r of Soc. Sec.*, 752 Fed. App'x 75, 79 (2d Cir. 2018). Where the opinion of a treating physician is not consistent with other substantial evidence in the record, such as the opinions of other medical experts, it need not be given controlling weight. *Halloran v. Branhart*, 362 F.3d 28, 32 (2d Cir. 2004). Moreover, where the opinion of a treating physician contains internal inconsistencies or contradicts the treating physician's treatment notes, the opinion of the treating physician is not entitled to controlling weight. *Monroe v. Cimm'r of Soc. Sec.*, 676 Fed. App'x 5, 7 (2d Cir. 2017). Genuine conflicts in the medical evidence are for the ALJ to resolve. *Veino v. Barnhart*, 312 F.3d 578, 588 (2d Cir. 2002). However, an ALJ may not substitute his own lay opinion for those of medical experts. *Balsamo v. Chater*, 142 F.3d 75, 81 (2d Cir. 1998). Moreover, a plaintiff is entitled to understand why the ALJ chose to disregard portions of medical opinions that were beneficial to her application for benefits. *Dioguardi v. Comm'r of Soc. Sec.*, 445 F. Supp.2d 288, 297 (W.D.N.Y. 2006). While the ALJ is not obligated to explicitly reconcile every conflicting shred of medical evidence, the ALJ cannot selectively choose evidence in the record to support her conclusions. *Gecevic v. Sec. of Health & Human Servs.*, 882 F. Supp. 278, 286 (E.D.N.Y. 1995). In the instant case, the Court finds that the ALJ appropriately weighed the medical opinions of plaintiff's orthopedists, primary care physician and consultative examiner, along with the underlying treatment notes and plaintiff's subjective complaints and reported activities of daily living to determine plaintiff's RFC, which is supported by substantial evidence.

<u>Adjustment to Other Work</u>

Plaintiff argues that the VE erred in finding plaintiff possessed transferrable skills and that the grids dictate a finding of disability for an individual of plaintiff's age with minimal skills. Dkt. #9-1, pp.25-30.

The Commissioner responds that the ALJ properly relied upon the VE's assessment of plaintiff's testimony regarding her work history to determine that she had transferrable skills. Dkt. #10-1, pp.27-29. In any event, the Commissioner notes that the VE also identified two unskilled positions which plaintiff could perform with her RFC. Dkt. #10-1, pp.29-31.

In the ordinary case, the Commissioner satisfies his burden at Step 5 of the sequential evaluation by relying upon the applicable medical vocational guidelines, commonly referred to at the Grid Rules. 20 C.F.R., Part 404, Subpart P, Appendix 2. For an individual capable of performing the full range of light work who is closely approaching advanced age with at least a high school education, Rule 202.13 through 202.15 provides for a finding of not disabled regardless of whether plaintiff's past work experience provided her with transferable skills, non-transferable skills or no skills. However, where, as here, plaintiff's non-exertional limitations significantly diminish the range of possible work within an individual's exertional level, testimony from a vocational expert is required to establish that there are jobs within the national economy that an individual with plaintiff's RFC can perform. *Bapp v. Bowen*, 802 F.2d 601, 605-606 (2d Cir. 1986).  To satisfy his burden, the Commissioner need show only one job

existing in the national economy that plaintiff is capable of performing. *Bavaro v. Astrue*, 413 Fed. App'x 382, 384 (2d Cir. 2011).

In response to an interrogatory asking whether an individual with plaintiff's RFC could perform any unskilled occupations with jobs that exist in the national economy, the VE identified information clerk and office helper as unskilled light exertional occupations. Dkt. #8, p.281. Dkt. #8, p.281. Contrary to the ALJ's interpretation of the VE's interrogatory response, however, the VE did not state that these jobs could be performed with a sit or stand option (Dkt. #8, p.27), but instead noted that "[t]hese positions would require a sit/stand option." Dkt. #8, p.281. Because the VE did not provide any indication that a significant number of information clerk and office helper jobs are available with a sit/stand option, the ALJ's determination that plaintiff could work in an unskilled job at the light exertional level is not supported by substantial evidence. *See Gallegos v. Colvin*, 2014 WL 4635418, at *5 (Sept. 11, 2014) ("If none of the jobs the VE mentioned actually do have sit/stand options, the adjudicator may be bound to rule for the claimant at step five."); *See* SSR 83-12, 1983 WL 31253 (S.S.A. 1983), at *5-6 (recognizing that unskilled types of jobs are particularly structured so that a person cannot ordinarily sit or stand at will and that VE testimony is necessary to clarify the implications of such a restriction on the occupational base).

The Grid Rules recognize that individuals approaching advanced age may be significantly limited in vocational adaptability if they are restricted to sedentary work

such that they will generally be found disabled where they can no longer perform

vocationally relevant past work and have no transferable skills. Grid Rule 201.00(g) &

201.14. Stated another way, to find a person approaching advanced age who is limited

to sedentary work not disabled, the ALJ must find that the individual acquired skills in

his past work that are transferable to other skilled or semi-skilled jobs. *Brown v. Colvin*,

146 F. Supp.3d 489, 493 (W.D.N.Y. Nov, 20, 2015). SSA Regulations define a skill as

> knowledge of a work activity which requires the exercise of
> significant judgment that goes beyond the carrying out of
> simple job duties and is acquired through performance of an
> occupation which is above the unskilled level (requires more
> than 30 days to learn). It is practical and familiar knowledge
> of the principles and processes of an art, science or trade,
> combined with the ability to apply them in practice in a
> proper and approved manner.

SSR 82-41, 1982 WL 31389, at *2 (S.S.A. Feb. 26, 1979). General abilities and

aptitudes, for example, the ability to learn and apply rules; ability to use reason and

judgment or the ability to think clearly and react quickly, are not skills. *Draegert v.*

*Barnhart*, 311 F.3d 468, 475-476 (2d Cir. 2002). On the other hand, typing, filing,

tabulating and posting data in record books; preparing invoices and statements; and

operating adding and calculating machines are recognized as clerical skills. *Id.* at *3.


In the instant case, the Court finds that the VE's testimony that plaintiff's

position as Documentum Coordinator, in which she utilized software to review, track

approval of and maintain standard operating procedures for the facility and maintained

archives of such documents, provided plaintiff with skills such as preparing, keeping,

sorting and distributing records and communications, as well as communicating and

systemizing information and data (Dkt. #8, p.63), sets forth sufficiently specific skills

acquired from plaintiff's past relevant work to satisfy SSA regulations. *See, e.g., Moryl v. Barnhart*, 06-CV-336, 2007 WL 9225067, at *6 (N.D.N.Y. Oct. 16, 2007) (recognizing data management as a transferable work skill). As the VE testified that the position of identification clerk matched the skill level, work field code and materials, products, subject matter, and services (MPSMS), code of plaintiff's past relevant work (Dkt. #8, pp.67-68), substantial evidence supports the ALJ's  determination that the skills acquired in plaintiff's past relevant work would transfer to the position of identification clerk. *See Brown*, 146 F. Supp.3d at 494-495 (W.D.N.Y. 2015) (noting that transferability of skills is most probable among jobs in which: (1) the same or lesser degree of skill is required; (2) the same or similar tools and machines are used; and (3) the same or similar raw materials, products, processes or services are involved).


## CONCLUSION

            Based on the foregoing, plaintiff's motion for judgment on the pleadings (Dkt. #9), is denied and the Commissioner's motion for judgment on the pleadings (Dkt. #0), is granted.


            The Clerk of the Court is directed to close this case.


            **SO ORDERED.**


**DATED:**          **Buffalo, New York**
                **July 31, 2020**

                          *s/ H. Kenneth Schroeder, Jr.*
                          **H. KENNETH SCHROEDER, JR.**
                          **United States Magistrate Judge**